IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 2:10cr15 |
| v. | ) | |
| | ) | |
| ANDYSHEH AYATOLLAHI, | ) | |
| | ) | |
| Defendant. | ) | |

POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING FACTORS

Now comes the United States, by its undersigned counsel, and for its position with respect to sentencing factors, states that it has no objection to the presentence report and that the probation officer has correctly calculated a prison range of 63-78 months. The Government recommends that the Court impose a prison sentence at the top end of the guideline range for the reasons discussed below.

A. **The Sentencing Guidelines**

Although a sentencing court may not presume that a sentence within the advisory Guidelines range is reasonable, the Guidelines remain a significant component of the sentencing process because the court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.S.G. § 3553(a), explaining any variance from the former with reference to the latter." Nelson v. United States, 555 U.S. 350, 351, 129 S. Ct. 890, 891-92 (2009).

The Government has no objections to the calculation by the probation officer of a sentencing guideline prison range of 63-78 months. The defendant has objected to the probation officer's application of a two-level enhancement under U.S.S.G. § 2B1.1(b)(10)(C) for an offense

involving sophisticated means, and a four-level increase in the offense level for aggravating role under U.S.S.G. § 3B1.1(a). In response, the Government states as follows:

*Sophisticated Means*

U.S.S.G. 2B1.1(b)(10)(C) provides for a two-level increase in the offense level if the offense "otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." Sophisticated means is defined in Application Note 9(B) as "especially complex or especially intricate offense conduct pertaining to the execution *or* concealment of an offense." (emphasis added); *see also United States v. Jackson*, 346 F.3d 22, 25 (2nd Cir. 2003) (sophisticated means includes conduct pertaining to the execution *or* concealment of an offense).

In this case, the probation officer has correctly applied the enhancement. The defendant executed a criminal conspiracy to commit financial institution fraud that resulted in a loss to Navy Federal Credit Union of $867,448.43. This was not a "garden variety" fraud by any means. Over a period of approximately **10 months**, the defendant and his co-conspirators facilitated **sixty-one** fraudulent car loans, with a total loan amount of $1,168,904.97. As noted in the agreed Statement of Facts, the defendant was the co-owner of Car Store. He and Car Store personnel, ***acting at the defendant's direction and with his knowledge***, engaged in a wide variety of fraudulent practices and activities to induce the credit union to approve these loans in the belief that the information in the loan applications and supporting documents was truthful and accurate. These practices and activities included (a) using individuals as straw buyers/borrowers to apply to Navy Federal Credit Union for car loans because the actual buyers were not sufficiently creditworthy to qualify for a car loan, (b) submitting materially fraudulent car loan applications to

Navy Federal Credit Union that falsely identified individuals as buyers/borrowers, overstated actual income and falsely reported other sources of income of the applicant, (c) submitting materially false documentation on behalf of loan applicants to Navy Federal Credit Union, including false pay stubs, employment information and wage and earning statements in support of fraudulent loan applications, (d) making telephone calls to Navy Federal Credit Union and impersonating buyers applying for car loans, (e) providing telephone numbers to Navy Federal Credit Union that falsely purported to be the number of a loan applicant's employer, and then impersonating the employer on the phone in order to falsely verify the applicant's employment and wages, (f) fraudulently inflating the true purchase price of vehicles on buyer's orders submitted to Navy Federal Credit Union in order to cause it to approve loans in an amount in excess of the true purchase price, and (g) splitting with buyers the loan proceeds fraudulently obtained in excess of the true purchase price of vehicles.  Statement of Facts ¶¶ 2-3.  Notably, not only did the defendant direct Car Store personnel to engage in these fraudulent practices and activities, but he engaged in them himself.  As noted in the presentence report, "[s]everal witnesses saw him actively participate in filling out fraudulent on-line loan applications and impersonating customers over the phone to get loans approved."  PSR ¶ 20.  Quite clearly, the defendant intentionally engaged in and caused the conduct constituting sophisticated means.

Finally, even if each individual step in a scheme is not necessarily elaborate, a scheme may be viewed as sophisticated when the steps are linked together.  *See Jackson*, 346 F.3d at 25 (noting that even if each step in an identity-theft fraud scheme was not elaborate, the enhancement applied because "the total scheme was sophisticated in the way all the steps were linked together"); *United States v. Finck*, 407 F.3d 908, 915 (8th Cir. 2005) ("Repetitive and coordinated conduct,

3

though no one step is particularly complicated, can be a sophisticated scheme"); *United States v. Lewis*, 93 F.3d 1075, 1083 (2nd Cir. 1996) (affirming application of the sophisticated means enhancement in a tax evasion because "[e]ven if each step in the planned tax evasion was simple, when viewed together, the steps comprised a plan more complex than merely filling out a false tax return"). Likewise, the steps taken by the defendant and others at his direction, when viewed and linked together, comprise a plan far more complex than merely filling out a false loan application.

In view of the foregoing, the application of the sophisticated means enhancement under U.S.S.G. 2B1.1(b)(10)(C) is entirely appropriate in this case.

*Aggravating Role*

U.S.S.G. § 3B1.1(a) provides for a four-level increase in the offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five more participants *or* was otherwise extensive." In this case, the adjustment applies because the defendant undoubtedly was an organizer and leader of a criminal activity that involved five or more participants, and in any event the criminal activity was "otherwise extensive."

In determining whether a criminal activity involved five or more participants, the defendant is counted as one of the five. *United States v. Fells*, 920 F.2d 1179, 1182 (4th Cir. 1990) (holding that the defendant himself, "as principal, should be included as a participant."). The following four defendants in related cases (*see* PSR ¶¶ 6, 9, 16 & 17) were also participants, as reflected in their individual Statement of Facts:

| Name | Case Number |
|---|---|
| Reza Azizkhani | 2:09cr108 |
| Edward Charles Dearborn | 2:09cr147 |
| Syavash Tajaddod | 2:08cr184 |
| Ashley Wynn | 2:08cr229 |

Azizkhani was the co-owner of Car Store who was aware of the illicit efforts to secure car loans from Navy Federal Credit Union and took steps to destroy evidence of the widespread fraud. 2:09cr108, ECF No. 6. Dearborn was a Car Store salesman and manager who played an active role in the fraudulent activity, including the creation of at least eight bogus pay stubs to support loan applications for Car Store buyers. 2:09cr147, ECF No. 8. Tajaddod was a Car Store salesman and manager who also created fraudulent loan documents. 2:08cr184, ECF No. 9. Wynn was the finance manager at Car Store who also prepared false loan documents. 2:08cr229, ECF No. 8.

Therefore, for purposes of U.S.S.G. § 3B1.1(a), there were at least five participants in the criminal activity. And regardless of the number of participants, quite obviously this was a widespread fraudulent loan scheme that was "otherwise extensive." As noted, over a period of approximately 10 months, the defendant and his co-conspirators facilitated sixty-one fraudulent car loans, with a total loan amount of $1,168,904.97.

What's more, there is no doubt that the defendant was an organizer and leader of this criminal activity. He was the co-owner of Car Store. The Car Store personnel who engaged in the fraudulent activities and practices did so "at the defendant's direction." Statement of Facts ¶ 3. He was "extremely hands-on on a daily basis" and "very few deals ever went through the

dealership without his approval." PSR ¶ 20. Also telling is that the defendant "split 60% of the profits from each fraudulent transaction with [co-owner] Reza Azizkhani." *Id*.

Accordingly, the four-level adjustment based on the defendant's aggravating role as an organizer and leader is appropriate in this case.

### B. The Statutory Sentencing Factors

In this case, for the reasons discussed below, the Government's view is that the imposition of a prison term at the top end of the 63-78 month Guideline range will provide a sentence sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

With respect to the nature and circumstances of the offense, the defendant, as the co-owner of Car Store, was the organizer and leader of a criminal conspiracy to commit financial institution fraud that resulted in a loss to Navy Federal Credit Union of $867,448.43. This was a case of widespread and flagrant fraud that spanned a period of approximately 10 months. As noted, the defendant and his co-conspirators facilitated sixty-one fraudulent car loans, with a total loan amount of $1,168,904.97. The defendant and Car Store personnel, acting at the defendant's direction and with his knowledge, engaged in the wide variety of fraudulent practices and activities described above in order to induce the credit union to approve these loans in the belief that the information in the loan applications and supporting documents was truthful and accurate. The defendant not only directed his co-conspirators to commit fraudulent acts, but he also committed such acts personally. As noted, "[s]everal witnesses saw [the defendant] actively participate in filling out fraudulent on-line loan applications and impersonating customers over the phone to get loans approved." PSR ¶ 20. Moreover, he split 60% of the profits from each fraudulent

transaction with the co-owner of Car Store. *Id*.

This was an egregious case of fraud that resulted in a substantial loss to Navy Federal Credit Union. And the defendant was not content with defrauding the credit union. He also cheated the Internal Revenue Service by filing false tax returns for three consecutive years. He underreported income in the aggregate amount of $330,277.00, resulting in a combined tax loss of $113,093.00. Statement of Facts ¶¶ 5-7. This is not a case where the defendant committed a single criminal transaction, without significant planning, that might be attributed to an isolated lapse of judgment or otherwise aberrant behavior. To the contrary, over an extended period of time the defendant committed both loan fraud and tax fraud, displaying a pattern of criminal activity.

There are simply no mitigating factors that weigh in favor of the defendant in this case. A sentence at the top of the advisory guideline range will satisfy the statutory sentencing factors by appropriately reflecting the seriousness of the offense, promoting respect for the law and providing just punishment for the offense. 18 U.S.C. § 3553(a)(2). Such a sentence will also afford deterrence to criminal conduct by others as well as protect the public from further crimes of the defendant. *Id*.

### C. The Government's Recommendation

In this case, after considering the statutory sentencing factors and for the reasons discussed above, the Government recommends that the Court sentence the defendant to a prison term at the top end of the 63-78 month sentencing guideline range.

Dana J. Boente
United States Attorney


By:       /s/
     Alan M. Salsbury
     Assistant United States Attorney
     Virginia State Bar No. 15682
     101 West Main Street, Suite 8000
     Norfolk, Virginia 23510
     Tel. - 757-441-6350
     Fax - 757-441-6689
     Email - alan.salsbury@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of July 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record who are users of the CM/ECF system.

/s/
Alan M. Salsbury
Assistant United States Attorney
Virginia State Bar No. 15682
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone Number - 757-441- 6331
Facsimile Number - 757-441-6689
E-mail Address - alan.salsbury@usdoj.gov